# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| U.S. Bank, N.A., as Trustee under Securitization Servicing Agreement dated as of June 1, 2006 Structured Asset Securities Corporation, Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 11 C 2899 |
| v. | ) ) | |
| Yolanda Ramos, and Jeronimo Fernandez, | ) ) ) | Judge Thomas M. Durkin |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff U.S. Bank, N.A., as Trustee under Securitization Servicing Agreement dated as of June 1, 2006 Structured Asset Securities Corporation, Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 ("U.S. Bank"), filed this mortgage foreclosure action against Defendants Yolanda Ramos and Jeronimo Fernandez, seeking a judgment of foreclosure in favor of the Bank and an award of $273,171.60 plus interest and attorneys' fees and costs.[1] Also before the Court is the Bank's motion to appoint special commissioner. For the following reasons, the Court grants U.S. Bank's

---

[1] U.S. Bank is a national association that is chartered under the laws of Ohio and that maintains its headquarters, or principal place of business, in Ohio. Defendants Ramos and Fernandez are citizens of Illinois. The amount in controversy exceeds $75,000 exclusive of interest and cost. This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1332, and venue is proper pursuant to 18 U.S.C. § 1391.

motion for summary judgment and enters judgment in favor of U.S. Bank and against Defendants. The Court also grants the Bank's motion to appoint special commissioner.

## Background

Defendants did not file a Local Rule 56.1(b)(3)(B) response to U.S. Bank's Local Rule 56.1(a)(3) statement of facts. Because Defendants failed to file their own statement or otherwise contest U.S. Bank's facts, the Court accepts as true the facts set forth in U.S. Bank's statement, viewing those facts and inferences in the light most favorable to U.S. Bank. *See* L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with a local rule, the district court justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement.") (citing Local Rule 56.1(b)(3)(C)). Defendants' failure to comply with Local Rule 56.1 does not, however, result in an automatic judgment for U.S. Bank. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). "The ultimate burden of persuasion remains with [the movant] to show that it is entitled to judgment as a matter of law." *Id.* Accordingly, the following uncontroverted material facts are taken from U.S. Bank's Local Rule 56.1(a)(3) statement, but the court will ultimately determine whether, on those facts, U.S. Bank is entitled to summary judgment.

On November 18, 2005, Acoustic Home Loans, LLC ("Acoustic") lent defendant Yolanda Ramos, an Illinois citizen, approximately $255,000.00 subject to an adjustable rate note ("Note") executed in favor of Acoustic. Pl. Statement of Facts ("SOF") ¶¶ 1, 2; R. 27-1, Exh. 1, Adjustable Rate Note. Under the terms of the Note, Ramos agreed to pay 8.6 percent in interest at a yearly rate, as well as taxes, insurance, and any other escrow items that may apply, and to make monthly payments on the first day of every month in the amount of $1,978.83. SOF ¶¶ 3, 4, 5. The Note further provides that Defendants "understand that [the] Lender may transfer this Note" and that the "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the note is called the 'Note Holder.'" R. 27-1, Exh. 1 at § 1.

On the same day, Acoustic secured its interest in the Note with a Mortgage on Defendants' home, located at 1734 North Sawyer Avenue, Chicago, Illinois 60647. R. 27-2, Exh. 2, Mortgage. On December 5, 2005, the Mortgage was recorded with the Cook County's Recorder's Office by Acoustic's nominee, the Mortgage Electronic Registration Systems, Inc. ("MERS"). SOF ¶ 6; R. 27-2, Exh. 2 at 1. The Mortgage secured to Acoustic "repayment of the Loan" and "the performance of Borrower's covenants and agreements under this Security Instrument and the Note." R. 27-2, Exh. 2 at 2. The Mortgage added, "[f]or this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS," Defendants' property. (*Id.*) Also included in the Mortgage was the agreement that

3

> MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law and custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(*Id.* at 3.)

On September 1, 2010, MERS, as Acoustic's nominee, assigned the rights associated with the Mortgage and Note to plaintiff U.S. Bank, N.A. SOF ¶ 11; R. 27-3, Exh. 3, Assignment of Mortgage. The Assignment of Mortgage was signed by Christina Carter, acting as "Assistant Secretary" and "Vice-President" of MERS. SOF ¶¶ 11, 15; R. 27-3, Exh. 3. According to the terms of the Assignment, U.S. Bank acquired all of MERS's interests in Defendants' property pursuant to the Mortgage. R. 27-3, Exh. 3.

On November 1, 2010, Ramos defaulted on her monthly obligation to pay principal, interest, and taxes, and has not made a payment since that time. SOF ¶ 12. There remains a principal balance of $244,761.95 with interest accruing on the unpaid principal balance of $58.02 per day plus attorneys' fees, foreclosure costs, late charges, advances, and expenses. SOF ¶ 13. On December 10, 2010, Ocwen Loan Servicing, LLC, acting as loan servicer for U.S. Bank, mailed Defendants a Notice of Default. SOF ¶ 14; R. 27-5, Exh. 5, Notice of Default. U.S. Bank then filed a complaint to foreclose on the mortgage in April 2011. R. 1. Defendants answered U.S. Bank's complaint, disputing the Bank's standing to foreclose by arguing that the Assignment of the Mortgage is invalid because it was not executed by MERS,

the mortgagee, but rather Ocwen Loan Servicing, who was not the named mortgagee. R. 13. Defendants also challenged U.S. Bank's ability to foreclose on the mortgage, claiming that they never received an acceleration letter and by failing to send them one, U.S. Bank failed to satisfy a condition precedent to foreclosure. (*Id.*) The Bank now moves for summary judgment. R. 26.

**Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Cogswell v. CitiFinancial Mortg. Co., Inc.*, 624 F.3d 395, 398 (7th Cir. 2010). To avoid summary judgment, the non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere

existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252; *see also Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal quotation marks omitted).

Defendants do not dispute that they were required to make monthly payments under the terms of the Note, they have failed to make any payments on the Note since November 2010, and there remains an outstanding principal balance of $244,761.95. Instead, Defendants argue that U.S. Bank cannot foreclose on the Mortgage, claiming that: (1) U.S. Bank lacks standing to bring the foreclosure action; (2) the Bank failed to satisfy a condition precedent for bringing a foreclosure action; and (3) the affidavit of debt used to support the Bank's summary judgment motion sets forth facts that amount to inadmissible hearsay.

## Analysis

### I.     U.S. Bank's Standing To Foreclose

Defendants first dispute U.S. Bank's standing to foreclose, arguing that the assignment of the mortgage from MERS to the Bank is defective. Specifically, Defendants assert that the Assignment is faulty because it was not executed by MERS at all, but rather by Christina Carter, who is an employee of Ocwen Loan Servicing, LLC, not MERS. This conflict creates a factual issue, Defendants argue,

6

that demonstrates U.S. Bank's lack of standing to bring this foreclosure action, precluding summary judgment.

Standing is a jurisdictional inquiry; indeed, it is "an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). The question of standing asks "whether the litigant is entitled to have the court decide on the merits of the dispute or particular issues." *Id.* at 444 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted)). It is the burden of the party invoking federal jurisdiction to establish the required elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Constitutional and prudential limitations exist on the jurisdiction of federal courts. *Warth*, 442 U.S. at 498. To demonstrate constitutional standing, the party invoking federal jurisdiction must establish (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012) (internal quotation marks omitted). U.S. Bank satisfies these requirements. The complaint alleges that the Mortgage is in default; that Defendants' failure to make monthly payments caused the default; and that a foreclosure judgment would redress the default.

Because prudential limitations also exist on a federal court's exercise of jurisdiction, even if constitutional standing is established, a plaintiff must also demonstrate that prudential requirements for standing have been satisfied. *Rawoof*

*v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008). One prudential-standing limitation is that plaintiffs must assert their own legal rights and interests and cannot sue to enforce the rights of third parties. *Id.* at 757 (comparing this prudential-standing limitation to Federal Rule of Civil Procedure 17's real-party-in-interest requirement). Although not labeled as such an argument, in essence, Defendants challenge, as a factual matter, the Bank's status as the real party in interest to bring a foreclosure action. Stated another way, by challenging the validity of the Assignment of Mortgage from MERS to U.S. Bank, Defendants argue that the Bank lacks prudential standing to sue. The Court thus turns to the question of whether the Assignment is valid.

Defendants asserts that "[o]n information and belief, Christina Carter is not an officer of MERS" but is rather an employee of Ocwen Loan Servicing, LLC.[2] R. 33 at 3-4. Because the Assignment was purportedly prepared not by the mortgagee, MERS, but was instead prepared by Ocwen, Defendants claim that the Assignment of Mortgage to U.S. Bank was not validly executed by MERS and is therefore defective, depriving the Bank of prudential standing to sue. As support for their claim that Carters is not an employee of MERS, Defendants point to the MERS Corporate Resolution—attached to U.S. Bank's 56.1 Statement, R. 27-6, Exh. 6, Corporate Resolution—effective March 2, 2011, which, according to Defendants, references an attached list of MERS officers but fails to identify Carter as an officer of MERS within the resolution itself.

---

[2] Ocwen is the loan servicer for U.S. Bank. R. 27-4, Exh. 4, Affidavit of Debt.

Defendants' argument is belied by the record. The opening paragraphs of the Corporate Resolution specifically refer to the signing officers "set forth on the attached list of candidates" who are "authorized to perform" listed actions "on behalf of and in the name of MERS." *Id.* The attached master list of MERS signing officers as of March 2, 2011 then lists Carter as one of the signing officers. Carter is therefore, contrary to Defendants' suggestion, an employee of MERS. Accordingly, the Court rejects Defendants' challenge to the validity of the Assignment in this regard, finding that they have failed to raise a material issue of disputed fact precluding summary judgment.[3] Because MERS's Assignment of Mortgage to U.S.

---

[3] In its reply to Defendants' response to its motion for summary judgment, U.S. Bank further defends the validity of the Assignment of Mortgage, arguing that (1) its possession of the Note, although unendorsed, leads to the presumption that it owns the Note and the rights to enforce it and is sufficient therefore to confer standing to collect on the Note; and (2) MERS, pursuant to the Mortgage, has an assignable interest in the Mortgage. R. 34 at 4-8. Unlike constitutional standing which is jurisdictional and cannot be waived, matters of prudential standing are waived if not preserved. *See Rawoof*, 521 F.3d at 756-57 ("[I]f there is no Article III standing, the court is obligated to dismiss the suit even if the standing issue has not been raised . . . . the court may raise an unpreserved prudential-standing question on its own, but unlike questions of constitutional standing, it is not obligated to do so.") (internal quotation marks omitted). Defendants' answer and response to U.S. Bank's summary judgment motion do not appear to raise any other challenge to the Bank's prudential standing other than the challenge to the validity of the Assignment described above relating to Christina Carter's employment status. R. 13 ¶¶ 12-17; R. 33 at 3-4. Because Defendants have raised no other matters of prudential standing in its pleadings, they are waived. *Rawoof*, 521 F.3d at 756-57. In any event, to the extent Defendants' pleadings can be read as raising any further challenges to the validity of the Assignment as described by the Bank in its response, they are meritless. *See Bank of New York Mellon Trust Co., N.A. v. Rangel*, No. 11 C 6437, 2012 WL 4094516, at *3-4 (N.D. Ill. Sept. 14, 2012) (applying Illinois law in interpreting similar contract language and rejecting standing challenges); *see also HSBC Bank USA, N.A. v. Hardman*, No. 12 C 481, 2013 WL 515432, at *3-4 (N.D. Ill. Feb. 12, 2013) (same).

Bank is valid, the Bank is properly asserting its own legal rights and interests in the Mortgage, and the Bank has standing to bring this foreclosure action.

## II. Condition Precedent To Foreclosure

Defendants also challenge the Bank's ability to foreclose on the mortgage, claiming that by failing to serve them with notice of acceleration and default, the Bank failed to satisfy a condition precedent to bringing a foreclosure action. Under Illinois law, "a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform."[4] *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir. 1992). Where a condition precedent is not satisfied, no breach of contract occurs for failure to perform. *Id.*

It is undisputed that, under Illinois law and the terms of the Mortgage, prior to an acceleration of the terms of the Mortgage, the lender was required to send Defendants a Notice of Default. R. 27-2, Exh. 2 at 11. U.S. Bank thus agrees that it was required to send a notice of default and acceleration to Defendants prior to foreclosure on the mortgage and that such service is, in fact, a condition precedent to the Bank's right to file a foreclosure suit or a suit to collect on the Note. But U.S.

---

[4] The parties do not discuss the contract's choice of law provision, which provides that the contract is "governed by federal law and the law of the jurisdiction in which the Property is located," which is Illinois. R. 27-2 at 10. Indeed, the parties assume that Illinois law applies—the Bank cites to Illinois cases. Where, as here, diversity jurisdiction is invoked, and the parties do not argue for the application of another state's law, nor argue how the substantive laws differ, the Court applies Illinois law, the law of the forum state. *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n. 7 (7th Cir. 1993); *see also Auto-Owners Ins. Co. v. Websolv. Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (applying forum state's choice-of-law principles to determine which state's substantive law applies).

Bank points out that it satisfied that condition by mailing the notice of default through Ocwen Loan Servicing—acting as servicer for the Bank—by certified mail, return receipt requested, to the Defendants at the mailing address that they provided. To support this argument, U.S. Bank attached a copy of a letter regarding notice and acceleration to its Rule 56.1 Statement that indicates that the notices were mailed to Defendants. R. 27-5 at 3-4, Exh. 5, Notice of Default. Defendants acknowledge this letter in their response to U.S. Bank's summary judgment motion, but counter that a copy of a letter is not proof of mailing, and that without such proof of mailing, a material issue regarding a disputed fact exists, precluding summary judgment.

To further support its claim that it mailed the notice, the Bank submitted a copy of a U.S. Postal Service confirmation that the document was mailed, delivery attempted, notice left at the delivery address, and that the notice was unclaimed. R. 35. Under the terms of the Mortgage, this was sufficient to provide Defendants notice of default. The Mortgage requires that the Lender give notice of default to Defendants prior to acceleration R. 27-2, Exh. 2 at 11, but states that any notice to Defendants "shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means," *id.* at 9. The Mortgage further provides that the "notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender." *Id.* Ocwen, acting as servicer to the Bank, delivered the Notice of Default through the United States Postal Service, in accordance with the terms of

Mortgage.[5] Consequently, the Bank satisfied this condition precedent to bring a foreclosure action.

To the extent that Defendants argue that they never received the Notice of Default,[6] the Court notes that the Mortgage does not require receipt of the Notice of Default for the notice requirement to be satisfied. Indeed, the evidence provided by the Bank demonstrates that the notice went unclaimed. R. 35. In regard to notices that are required to be provided to the Borrower by the Lender, the Mortgage specifies that the notice requirement is satisfied "when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." *Id.* at 11. Absent from the Mortgage is a requirement that in order to satisfy the notice requirement, the Defendants must have actually received the Notice of Default. Accordingly, even if Defendants did not receive the Notice of Default, that would not prevent a foreclosure judgment. *See Bank of New York Mellon Trust Co. v. Weatherspoon*, No. 11 C 3495, 2012 WL 1430361, at *3 (N.D. Ill. Apr. 25, 2012).

## III. Validity of Affidavit of Debt

Finally, Defendants argue that the affidavit of debt that U.S. Bank submitted in support of its summary judgment motion suffers from numerous deficiencies. Specifically, they argue that the affiant, Rene Martinez, lacks personal knowledge of their records, pointing to among other things, Martinez's failure in the affidavit

---

[5] Defendants make no challenge to Ocwen's status and its ability to satisfy the notice requirement in the Mortgage.

[6] Defendants asserted this argument in their answer, but failed to renew it in their response to the Bank's summary judgment motion.

to allege that she is the maker of the records that she reviewed. At bottom, Defendants allege that the affidavit refers to records that amount to inadmissible hearsay and thus cannot be used to support the Bank's motion for summary judgment.

Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Relatedly, Federal Rule of Civil Procedure 56(c)(4) provides that an affidavit used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Luster v. Illinois Dep't. of Corr.*, 652 F.3d 726, 731 n. 2 (7th Cir. 2011).

Defendants argue that the affidavit U.S. Bank relies on in support of its summary judgment motion sets out facts that constitute hearsay that would be inadmissible at trial. The Bank counters that Martinez's affidavit of debt demonstrates that Martinez had personal knowledge of the records she reviewed and sets out facts that demonstrates that those records fall under the Federal Rule of Evidence 803(6) business records exception. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Jordan v. Binns*, — F.3d —, No. 11-2134, 2013 WL 1338049, at *2 (citing Fed. R. Evid. 801(c)). "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.

13

1997). Rule 803(6) excepts regularly kept business records from the hearsay ban if certain conditions of admissibility have been established, so long as those conditions "are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6). To qualify as a business record under Rule 803(6), "(1) the document must be prepared in the normal course of business; (2) it must be made at or near the time of the events it records; and (3) it must be based on the personal knowledge of the entrant or on the personal knowledge of an informant having a business duty to transmit the information to the entrant." *Krawczyk v. Centurion Capital Corp.*, No. 06 C 6273, 2009 WL 395458, at *4 (N.D. Ill. Feb. 18, 2009) (quoting *Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1032 (7th Cir. 1990)). The primary emphasis of Rule 803(6) is ultimately that "neither the source of information nor the method of circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

At the outset, contrary to Defendants' argument, to qualify as a business record under the Rule 803(6) exception, the witness need not have created the records about which she is testifying. *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006); *United States v. Keplinger,* 776 F.2d 678, 693-94 (7th Cir. 1985) ("[T]he business records exception contains no requirement that a 'qualified witness' must have personally participated in the creation or maintenance of a document . . . nor even know who actually recorded the information.") (internal citations omitted). Instead, at the summary judgment stage, "the party seeking to offer the business record must attach an affidavit sworn to by a person who would

14

be qualified to introduce the record as evidence at trial" such as a custodian or otherwise qualified witness who can "speak from personal knowledge that the documents were admissible business records." *Thanongsinh*, 462 F.3d at 777 (quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)). Accordingly, the witness must explain the record-keeping procedures of the organization and be familiar with the company's record-keeping practices. *Id.*

Applying the aforementioned principles, the Court finds that based on its review of Martinez's affidavit, Martinez is qualified to testify at trial based on her personal knowledge that the documents attached to her affidavit are business records. Consequently, the affidavit is appropriate summary judgment evidence. Although Martinez did not create the records, in her affidavit, she attests to her personal knowledge—through her position as a contract management coordinator at Ocwen Loan Servicing, LLC—of, and familiarity with, Ocwen's procedures and records of loan payments, collections, and delinquencies as servicer of mortgage loans. R. 27-4 at 1. Based on her knowledge of the processes by which Ocwen's servicing records are created and maintained, Martinez further attests to the Bank's ownership of the loan and that (1) the servicing records were made at or near the time by, or from information provided, persons with knowledge of the activity and transactions reflected in the records; (2) the records are kept in the ordinary course of Ocwen's regular business activity; and (3) it was Ocwen's regular practice to make and update the records. Martinez also attests to the Defendants' account, which includes information regarding the principal balance of the Note, the

amount of late charges, the unpaid interest under the Note and the percentage rate of that interest, the amount due in reimbursement from the cost of trying to collect from Defendants, and the total amount of indebtedness due. *Id*. at 2. Attached to Martinez's affidavit is a printout of the regularly maintained Servicing Record, which lists the loan number, the loan's interest rate, the principal balance, and the payments on which Defendants have defaulted. (*Id*. at 3-4.)

Martinez's affidavit demonstrates that as an employee of Ocwen who services the Bank's loan, she has personally reviewed the pertinent documents and verified the amounts listed in the affidavit and attached servicing record are correct. Because the affidavit satisfies the requirements of Rule 803(6) and is ultimately reliable and trustworthy, the Court concludes that it can be used in support of the Bank's motion for summary judgment.

What the affidavit establishes—indeed, what is undisputed—is that Defendants were contractually obligated to make monthly payments and that they have failed to do so since November 1, 2010. SOF ¶ 13. Accordingly, they have breached their agreement under the Note and Mortgage and are in default. U.S. Bank has now exercised its right to require payment of the debt and to recover its expenses and attorneys' fees. Defendants have not disputed or refuted any of the Bank's calculations of the outstanding sums due on their loan. Thus, the total indebtedness as of June 9, 2011 (when the complaint was filed) is $244,761.95, with unpaid interest accruing on the unpaid principal balance of $58.02 per day thereafter, plus reasonable attorney's fees and costs. (*Id*.) Defendants have

presented no genuine issue as to any material fact, and consequently, U.S. Bank is entitled to summary judgment and a judgment of foreclosure.

### Conclusion

For the reasons stated above, the Court grants U.S. Bank's motion for summary judgment. The Court also grants U.S. Bank's motion to appoint The Judicial Sales Corporation as special commissioner to conduct a public foreclosure sale of the property. By the April 23, 2013 status, U.S. Bank shall submit a proposed foreclosure judgment order reflecting a judgment of foreclosure in favor of U.S. Bank; an award of $273,171.60, plus interest of $58.02 per day after June 9, 2011; an attorneys' fees and costs amount; and any further action that is necessary and consistent with the Court's order.

ENTERED:

_Thomas M Durkin_
_____
Thomas M. Durkin
United States District Judge

Dated: April 11, 2013